1  WHATLEY DRAKE & KALLAS, LLC
   Joe R. Whatley, Jr., Esq.
2  Edith M. Kallas, Esq.
   1540 Broadway, 37th Floor
3  New York, NY 10036
   Tel: (212) 447-7070
4  Fax: (212) 447-7077

5  EMERSON POYNTER LLP
   John G. Emerson, Esq.
6  830 Apollo Lane
   Houston, TX 77058-2610
7  Tel: (281) 488-8854
   Fax: (281) 488-8867

8
   THE CONSUMER LAW GROUP
9  Alan M. Mansfield (SBN 125998)
   alan@clgca.com
10 9466 Black Mountain Road, Suite 225
   San Diego, CA 92126
11 Tel: (619) 308-5034
   Fax: (888) 341-5048
12
   [ADDITIONAL COUNSEL ON SIGNATURE PAGE]
13
   Attorneys for Plaintiffs
14

15              **UNITED STATES DISTRICT COURT**

16     **CENTRAL DISTRICT OF CALIFORNIA - EASTERN DIVISION**

17 LAURIE M. MONTANEZ and      ) Case No.
   JEHAN HUGHES,  individually and )
18 on behalf of all others similarly ) **CLASS ACTION**
   situated,                    )
19                              ) **COMPLAINT FOR VIOLATION OF:**
            **Plaintiffs,**      )
20                              ) 1) **BUS. & PROF. CODE SECTIONS**
        v.                      )    **17200, *ET SEQ*.,**
21                              ) 2) **BUS. & PROF. CODE SECTIONS**
   **GERBER CHILDRENSWEAR,**     )    **17500, *ET SEQ*.,**
22 **LLC; and WAL-MART STORES,** ) 3) **CONSUMERS LEGAL**
   **INC.,**                     )    **REMEDIES ACT,**
23                              ) 4) **ALTERNATIVE CLAIM FOR**
            **Defendants.**      )    **RELIEF UNDER STATE CON-**
24                              )    **SUMER PROTECTION LAWS,**
                                ) 5) **COMMON COUNTS AND**
25                                   **UNJUST ENRICHMENT,**
                                  6) **BREACH OF IMPLIED**
26                                   **WARRANTIES, and**
                                  7) **VIOLATION OF CIVIL CODE**
27                                   **SECTION 1709**

28                                **DEMAND FOR JURY TRIAL**
   _____
                        1
   _____
   CLASS ACTION COMPLAINT

Plaintiffs Laurie M. Montanez and Jehan Hughes ("Plaintiffs"), individually and on behalf of all other persons similarly situated, file this Class Action Complaint (the "Complaint"), and where specifically so identified allege upon personal knowledge matters pertaining to themselves and their own acts, and as to all other matters, upon information and belief, based upon the investigation undertaken by Plaintiffs' counsel, which facts are likely to have evidentiary support after the opportunity for further investigation and discovery:

## I.

## <u>JURISDICTION AND VENUE</u>

1.     This Court has jurisdiction over this class action under 18 U.S.C. §1332(d), which under the provisions of the Class Action Fairness Act ("CAFA") explicitly provides for the original jurisdiction in the federal courts of any class action in which any member of the Class is a citizen of a State different from any Defendant, and in which the matter in controversy exceeds in the aggregate the sum of $5,000,000, exclusive of interest and costs.  Plaintiffs allege that the total claims of individual class members in this action are in excess of $5,000,000 in the aggregate, exclusive of interest and costs, as required by 28 U.S.C. §1332(d)(2), (5).  Plaintiffs are citizens of California, whereas, as set forth below, Defendant Gerber is a citizen of either New York, Delaware or South Carolina and Defendant Wal-Mart Stores, Inc. (named only in the Eighth Cause of Action only for purposes of satisfying any privity requirement) is a citizen of Arkansas.   Furthermore, Plaintiffs allege that the total number of members of the proposed Class is greater than 100, pursuant to 28 U.S.C. §1332(d)(5)(B).  Therefore, diversity of citizenship exists under CAFA as required by 28 U.S.C. §1332(d)(2)(A).

2.     Venue is proper in this District and Division under 28 U.S.C. §1391. Defendant Gerber Childrenswear LLC markets and sells apparel for babies and young children in this District and has availed itself of the laws and protections of the State of California.  Additionally, Plaintiff Montanez lives in this District and

2

CLASS ACTION COMPLAINT

Division and purchased the defective apparel within this District and Division from a Wal-Mart store located in this District and Division.

## II.

## INTRODUCTION AND SUMMARY OF ALLEGATIONS

3.       This is a class action lawsuit brought on behalf of Plaintiffs and other similarly situated individuals (the "Plaintiffs" or the "Class") against Gerber Childrenswear LLC ("Gerber" or "Defendant")[1].   Plaintiffs bring this action pursuant to Rule 23 of the Federal Rules of Civil Procedure to redress Gerber's failure to disclose and provide adequate warning to consumers that the infant and children's tagless clothing it designed, manufactured, distributed and sold to the consuming public contained toxic chemicals such as Bis(2-ethylhexyl) Phthalate ("DEHP") and Dibutyl Phthalate ("DBP"), which were and are known hazardous substances as reflected in California's Proposition 65 list of substances known to the State to be carcinogenic and/or are developmental and reproductive toxins.   In addition, DEHP and DBP are reported to cause, *inter alia*, severe skin irritations such as the ones incurred by Plaintiffs' infant children.   Gerber, as the manufacturer of such products, would have been in exclusive possession of information providing it knowledge about the presence of such chemicals.   Gerber provides no disclosures on any such products about the presence of such chemicals, even though they sell clothing that is intended to be worn by infants and children, who are more susceptible to chemical toxicity than adults, and thus such disclosures are material relative to the safety of such products.   Gerber's unlawful, unfair and fraudulent business acts and practices as detailed below relating to the distribution and sale of Gerber's apparel products containing heat-transferred "tagless" labels (referred to herein as "defective clothing" or "defective apparel"),

---

[1]       Wal-Mart Stores, Inc. is named as a defendant only to the extent the Court finds privity is required to assert warranty claims against Gerber.   Therefore, the Complaint will only refer to Gerber, except as otherwise expressly indicated.

CLASS ACTION COMPLAINT

1
2
3

without disclosing the presence of toxic chemicals that were unsafe for children to be exposed to, were likely to have misled the public into believing the defective apparel was suitable for its intended purpose, when it was not.

4
5
6
7
8
9
10
11
12

4. Gerber designs, distributes, and markets branded children's wear under the Gerber brand. Gerber operates in two business segments: Apparel and Hosiery. The Apparel segment produces infant and toddler sleepwear, underwear, bedding, bath, cloth diapers, and other products. These are sold to mass merchandise outlets in the United States under the Gerber, Curity and Onesies brand names. It also distributes products to mid-tier department stores and specialty retailers, such as Babies "R" Us, BEALLs, BJ's Wholesale Club, Burlington Coat Factory, Kmart, ShopKo, Target, Toys "R" Us and Wal-Mart. (http://www.gerberchildrenswear.com/WHERETOBUY/tabid/135/Default.aspx).

13
14
15
16
17
18
19
20

5. Gerber describes its business on its website as follows:

Gerber Childrenswear LLC is a leading marketer of infant and toddler apparel and related products, which it offers under its flagship licensed brand, Gerber, Curity, and the Onesies brand one-piece underwear. The company is the leading provider of these products to volume retailers, and also distributes to department stores and specialty retailers. *See* http://www.gerberchildrenswear.com/HOME/AboutUs/tabid/155/Default.aspx.

21
22
23
24
25
26

6. At all relevant times, Gerber misrepresented and suppressed material facts about the safety of its defective apparel and negligently designed, manufactured, marketed, advertised, promoted sold and/or distributed such products as, *inter alia,* having "No label in neck *to protect baby's delicate skin.*" *See, e.g.*, http://www.gerberchildrenswear.com/OURPRODUCTS/tabid/118/CategoryID/153/List/1/Level/a/ProductID/414/Default.aspx.

27
28

7. At all relevant times, Gerber did not implement sufficient quality control measures or adequately monitor the manufacturing and design of the

4

defective apparel.  Consequently, Gerber allowed the defective apparel to be sold in the United States with chemicals and/or other adulterants that were dangerous and caused severe skin reactions in the infants who were the intended users of these products.

8.    At all relevant times, Gerber had a duty to market safe apparel but failed to adequately monitor and inspect the quality of the defective apparel, thereby allowing such products to be sold, and were intended by them to be worn by infants and toddlers.  Gerber either was aware or reasonably should have known that the defective apparel would be worn by small children who are more susceptible to chemical toxicity than adults, and that these products contained chemicals and/or other adulterants such as DEHP and DBP that have been identified by the State of California and both federal and worldwide health agencies to be dangerous, and appear on the State's Proposition 65 list of chemicals known to be carcinogens and developmental/reproductive toxicants, and reportedly can cause severe skin reactions.

9.    At all relevant times, Gerber failed to warn consumers of the dangers inherent in use of the defective apparel including, but not limited to, the fact its apparel products containing heat-transferred or "tagless" labels contain chemicals and/or other adulterants that can be extremely dangerous and cause severe skin reactions in small children.

10.    At all relevant times, Gerber either had reason to know or should have known of the defective nature of the infant and children's apparel and resulting risk of injuries, but by failing to disclose material facts about the safety of such products that they were obligated to disclose, engaged in conduct that prevented Plaintiff and Class members from making informed choices about the selection of apparel products containing heat-transferred or "tagless" labels.  As a result, consumers purchased clothing with tagless labels containing toxic chemicals such as DEHP and DBP at levels sufficient to cause severe rashes and other

5

CLASS ACTION COMPLAINT

injuries, which Plaintiffs and other reasonable consumers would likely not have purchased if they had been provided full and adequate disclosures of the presence of such chemicals and their potential adverse impact on small children.

11.   Plaintiffs seek compensatory, incidental and exemplary damages as appropriate for themselves and all others similarly situated as a result of the purchase and/or use of the defective apparel, which caused, may cause and/or continue to cause Plaintiffs and the Class members to suffer injuries, economic losses and other expenses.

12.   Further, Plaintiffs seek injunctive, equitable monetary and other relief for themselves and all others similarly situated to proactively redress these issues and to compensate them, in whole or in part, for the economic issues that confront them as a result of their purchase and use of Gerber's apparel products containing heat-transferred or "tagless" labels, including restitution and disgorgement, the return of any purchase price paid, interest on these amounts from the date of purchase, medical monitoring expenses, attorneys' fees and costs, as well as any other legal or equitable relief to which Plaintiffs may be entitled and whatever further relief the Court deems just and proper under the circumstances.

## III.

## PARTIES

13.   On personal knowledge, Plaintiff Laurie Montanez is an individual consumer who, at all times material hereto, was and is a resident of Rancho Cucamonga, California. She purchased Gerber's apparel at retail stores in California, such as Gerber Onesies, including at the Wal-Mart Store in Upland, California during the Fall of 2008.  These clothes have been worn by her infant child.  As a result of wearing Gerber clothing, her infant child has experienced skin rashes in the lower neck area.   Said rashes were sufficiently severe that Ms. Montanez took her to infant child to a physician for treatment of the rashes on two occasions before she realized that the cause of the rashes was the defective

6

CLASS ACTION COMPLAINT

clothing she had purchased for the child.  When Ms. Montanez stopped using such tagless clothing her infant child ceased to suffer from rashes in her neck area.  Despite demand therefor, Gerber has refused to resolve this defect as to both her and all others similarly situated.

14.    On personal knowledge, Plaintiff Jehan Hughes is an individual consumer who, at all times material hereto, was and is a resident of Long Beach, California.  She purchased Gerber's apparel at retail stores in California, such as Gerber Onesies, including at the Target and Wal-Mart stores in Long Beach, California, between July and November, 2008.  These clothes have been worn by her infant son.  As a result of wearing Gerber clothing, her infant son has experienced skin rashes in the neck area.  These rashes were sufficiently severe that Ms. Hughes took her to infant to two physicians for treatment of the rashes.  When Ms. Hughes stopped using such tagless clothing her infant son stopped suffering from rashes in the neck area.  Despite demand therefor, Gerber has refused to resolve this defect as to both her and all others similarly situated.

15.    Defendant Gerber Childrenswear LLC is organized and existing under the laws of the State of Delaware, with its principal place of business listed as being located at 7005 Pelham Rd., Greenville, South Carolina  29615, and also identified as being located at 1333 Broadway, Suite 700, New York, New York 10018.  Prior to the Fall of 2008, Gerber was owned by St. Louis-based apparel manufacturer Kellwood Co.  Since then, Gerber has been owned by Childrenswear LLC, an affiliate of the private equity firm Sun Capital Partners, Inc.  Sun Capital Partners, Inc. maintains its corporate headquarters in 5200 Town Center Circle, Suite 600, Boca Raton, Florida 33486, and has offices in New York and California.  At all relevant times, Gerber was and is doing business within this District and Division.

/ / /

/ / /

CLASS ACTION COMPLAINT

16.   Defendant Wal-Mart Stores, Inc. ("Wal-Mart") is organized and existing under the laws of the State of Arkansas, with its principal place of business listed as being located at 701 S.W. 8ᵗʰ Street, Bentonville, Arkansas 72716, and is incorporated and authorized to do business and is doing business in the State of California within this District and Division.

17.   At all times herein mentioned, the employees of subsidiaries, affiliates and other related entities of Gerber were its agents, and at all times herein mentioned, each was acting within the purpose and scope of said agency and employment.   Whenever reference in this Complaint is made to any act or transaction of Defendant, such allegation shall be deemed to mean that the principals, officers, directors, employees, agents, and/or representatives of Defendant committed, were aware of, performed, authorized, ratified and/or directed such act or transaction on behalf of said Defendant while actively engaged in the scope of their duties.

## IV.

## FACTUAL BACKGROUND

**A.**   **Gerber Has Been on Notice that Tagless Labels in its Apparel Have Caused Numerous Infants and Small Children to Suffer Skin Injuries.**

18.   Plaintiffs and other parents who have clothed their babies in Gerber apparel have seen their children suffer severe skin damage in the area where the Gerber tagless label contacts the skin.

19.   Numerous consumers have noted on Internet sites that their children have been similarly injured by Gerber apparel with tagless labels.   Hundreds of reports raising similar claims have been posted.   In many instances, families have reported contacting Gerber to inquire about the injuries caused by the hazardous chemicals in tagless labels on Gerber clothes.   Typical entries read:

/ / /

8

CLASS ACTION COMPLAINT

"Wow Cathy!  I had a similar reaction to my child's rash.  I too didn't realize what was causing the rash for a while and **I felt so bad when I finally realized that the nice, clean Gerber onesies I kept putting on her were the problem!**"

http://www.dld123.com/q&a/index.php?cid=5762 (emphasis supplied).

"A few weeks ago, I bought a pack of plane (sic) white tagless Gerber onesies and she started scratching again.  This time I knew it wasn't from a heat wave.  **The worst part of her rash was right where the face of the Gerber baby's face is stenciled.** I've stopped using them and viola! The scratching is over and the rash is gone."

http://momsjournal.org/20090217/attack-of-the-gerber-tagless/ (emphasis supplied).

"So glad to find this as well.  My daughter has been having reactions since about 4 months also and I've just discovered that the Gerber tagless tags seem to bother her the most. I tested it out by putting the clothing on with the tag on her chest and her chest had the same reaction. **I called Gerber to get information on what material is used. They said they could not tell me because it is proprietary information**, but could assure me that there was no latex used. That's all the info I have, but am going nuts trying to find clothing that she can wear that doesn't bother her. Any advice on where to get clothing that's made for sensitive skin?"

http://www.dld123.com/q&a/index.php?cid=5762 (emphasis supplied).

"Hey everyone! I just reported my issues w/ Carter's and Gerber's tagless tags to the US Consumer Product Safety Commission 1-800-638-2772 or file a report online too. It would be great if everyone reported their own incidents to the Commission so that these companies have more pressure to use safer, nontoxic materials on our babies. If your babies had the same itchy, red and raw rash my

9

CLASS ACTION COMPLAINT

baby suffered for months then you would do it. I mean I had to give her Benadryl and Hydrocortisone cream (neither are good for babies) when it got really bad AND had to pay for a doctor's visit all b/c of these products!"

http://www.dld123.com/q&a/index.php?cid=5762 (emphasis supplied).

20.    In addition, statements by the U.S. Consumers' Product Safety Commission in November 2008 specifically addressed the problem of chemicals in tagless labels causing rashes, and thereby provided further confirmation to Gerber that the use of tagless labels could cause the problems at issue here.  However, Gerber apparently ignored these warnings.

**B.    Children are More Susceptible to Chemical Toxicity Than are Adults**

21.    The fact that children are more susceptible to chemical toxicity than adults is widely recognized.

22.    The National Academy of Sciences ("NAS") has published a report emphasizing that children are not little adults with respect to potential chemical toxicities:

"A fundamental maxim of pediatric medicine is that children are not 'little adults.'  **Profound differences exist between children and adults.**  Infants and children are growing and developing.  Their metabolic rates are more rapid than those of adults.  There are differences in their ability to activate, detoxify, and excrete xenobiotic compounds.  All these differences can affect the toxicity of pesticides in infants and children, and for these reasons the toxicity of pesticides is frequently different in children and adults [....]

("Pesticides in the Diets of Infants and Children" National Science Foundation, at 3-4 (1993)) (emphasis added).

/ / /

10

CLASS ACTION COMPLAINT

23.    The Natural Resources Defense Council ("NRDC") issued a report in 1997 titled "Our Children At Risk: The 5 Worst Environmental Threats To Their Health."  NRDC explained that children are relatively more susceptible to potential chemical toxicities:

> "Pound for pound, children breathe more air, drink more water, and consumer more food than adults.  **This higher rate of intake means that children will receive higher doses of whatever contaminants are present** in the air, water, or food.  In addition, **infants have a relatively greater surface area of skin than adults, thereby increasing their potential dermal absorption of certain compounds**....  A typical newborn weighs one-twentieth of the weight of an adult male, but the infant's surface area is one-eighth as great.  Therefore, the total area of skin that could be exposed to a chemical...is two and a half times as great per unit of body weight in the infant as in the adult."

NRDC Report, Ch. 2 (citing  International Programme on Chemical Safety, Principles for Evaluating Health Risks From Chemicals During Infancy and Early Childhood: The Need for a Special Approach, Environmental Health Criteria 59, World Health Organization, 1986) (emphasis added).

24.    In 2000, researchers from the Environmental Protection Agency ("EPA") National Exposure Research Laboratory and the Environmental and Occupational Health Sciences Institute published a report entitled "Children's Exposure Assessment:  A Review of Factors Influencing Children's Exposure, and the Data Available to Characterize and Assess That Exposure."   The authors observe in part:

> Both Phsyiologic and behavioral characteristics influence children's exposures to environmental contaminants [....]

/ / /

11

CLASS ACTION COMPLAINT

*Physiologic characteristics.*   These characteristics influence exposure by affecting a child's rate of contact with exposure media or by altering the exposure-uptake relationship that governs internal dose resulting from an exposure.  Children have a much larger surface area relative to body weight than do adults.  The surface-area-to-body-weight ratio for newborn infants is more than 2 times greater than that for adults [....]

The absorbed dose – the amount of chemical that crosses a receptor's external boundaries – of an environmental contaminant probably is the relevant measure of exposure for the assessment of health risk.  Age-dependent barrier properties of the skin, respiratory tract lining, and gastrointestinal tract lining influence absorbed dose.  The permeability of the skin, highest at birth, decreases in the first year such that the skin of a 1-year-old child is similar to that of an adult.  (citing Bearer CF, "How are children different from adults?" *Environ Health Perspect* 103:7-12 (1995)).  In addition, a layer of subcutaneous fat develops at approximately 2 – 3 months of age in infants and continues to exist through the early toddler period.  This layer of fat may act as a sink for lipophilic chemicals absorbed through the skin (citing Thompson H. Physical growth. In:  Manual of Child Psychology (Carmichael L, ed).  New York:  John Wiley and Sons, 1946; 255-294).

(Cohen Hubal, *et al.*, *Environ Health Perspect* 108:475-486, at 476 (2000)).

25.   The EPA issued its "Supplemental Guidance for Assessing Susceptibility from Early-Life Exposure to Carcinogens," ("EPA Supplemental Guidance") in early 2005.  EPA recognized that toxicokinetic and toxicodynamic differences between children and adults are greatest during the first two years of life.  (EPA Supplemental Guidance, at 32) (citations omitted).

CLASS ACTION COMPLAINT

26.     Environmental Working Group ("EWG"), a non-profit environmental research organization whose organizational goals include to "protect the most vulnerable segments of the human population—children, babies, and infants in the womb—from health problems attributed to a wide array of toxic contaminants," issued a report summarizing the research demonstrating the vulnerability of children to toxins applied to the skin:

> "Consider the skin.  Studies confirm what any parent knows:  an infant's skin is soft and delicate (Fluhr 2000; Giusti 2001).  Infant skin is also considerably thinner than adult skin; in fact, the thickness of children's skin increases linearly with age, typically reaching a maximum at age 20 (Tan 1982).  The thin skin of a newborn may well be more permeable to specific chemicals than the skin of an adult.  Compounding this fact, **the surface area of a child's skin relative to body weight is greater than adults, such that the potential dose of a chemical following dermal exposure is likely to be about 3 times greater in infants than in adults** (West 1981; Clewell 2002).

> "**Babies and children thus receive far greater exposures than adults to ingredients in personal care products slathered on their skin.**  Sensitivity to many chemicals in children's care products causes eczema (Katelaris 2006), and may produce more subtle damage later in life.  Exposures to industrial chemicals may prime children for adult diseases (NAS 1993; EPA 2005), just as a few severe sunburns during childhood doubles the likelihood of developing malignant melanoma later in life (Oliveria 2006)."

(http://www.cosmeticsdatabase.com/special/parentsguide/children.php?nothanks=1) (emphasis added).

27.     Based on these empirical data and the fact that Defendant's conduct is targeted at small children, whom the science recognizes are more sensitive to

13

chemicals and who are also more susceptible to being exposed to harmful chemicals, Defendant had a duty to be particularly vigilant to ensure that the infant products in question did not contain any harmful chemicals that might have both short and long term safety impacts, even at potentially very small exposure levels. Indeed, as detailed below, Defendant recognizes that it has an obligation and duty to ensure its products are safe when used as intended by babies and small children.

**C.      Gerber Brand Image and Advertising**

28.     Gerber has consistently sought to promote its brand and present itself as supremely concerned with baby safety.

29.     For example, the Gerber's website has stated and currently states:

**Here at Gerber Childrenswear, there are certain protocols and testing processes that we follow to ensure our products are safe for your baby**.  We want you to sleep better at night knowing that your infant is safe and secure.

**We are constantly keeping abreast and compliant with the evolving federal, state and retailer safety requirements in the children's market**.

http://www.gerberchildrenswear.com/NEWWWW/SocialAwareness/Environmenta ndSafety/tabid/139/Default.aspx (emphasis supplied).

30.     With respect to the Gerber Preemie line, the website states:

Many babies come into this world a little early and often have special needs.  **That's why we've created our Preemie Collection to allow for the gentlest handling of babies who need the most delicate care.  We've used fabric that provide the softest touch to the skin** and tailoring techniques for easy access.  The product is **designed for baby's special needs** in addition to a broad assortment of fashionable designs.

14

CLASS ACTION COMPLAINT

http://www.gerberchildrenswear.com/OURPRODUCTS/tabid/118/List/1/CategoryID/153/Level/a/Default.aspx (emphasis supplied).

31.     The website consistently states with respect to the Preemie line for boys "No label in neck to protect baby's delicate skin." *See, e.g.,* http://www.gerberchildrenswear.com/OURPRODUCTS/tabid/118/CategoryID/153/List/1/Level/a/ProductID/414/Default.aspx

32.     The website consistently states with respect to the Boys line "Label free to help protect baby's delicate skin." *See, e.g.,* http://www.gerberchildrenswear.com/OURPRODUCTS/tabid/118/CategoryID/154/List/1/catpagesize/100/Level/a/ProductID/329/Default.aspx.

33.     The website consistently states with respect to the Girls line "Label free to help protect baby's delicate skin." *See, e.g.,* http://www.gerberchildrenswear.com/OURPRODUCTS/tabid/118/CategoryID/168/List/1/Level/a/ProductID/319/Default.aspx.

34.     Thus, Gerber publicly recognizes and attempts to falsely assure the public that these products are designed to protect babies and small children, and were tested to ensure these products are safe, when in fact the products at issue caused Plaintiffs' children and children of many Class members to suffer severe skin irritation and all to be exposed to hazardous chemicals banned for use in children's products under federal law.  These statements also show that Defendant acknowledges parents' particular safety concerns regarding the need to protect their children, and their own duty to avoid disseminating clothing products that could affect the safety of the intended users of these products.

   **D.     Tagless Labels Adhered to Gerber's Children's Apparel Formulated With DEHP and/or DBP are Inherently Unsafe.**

35.     The tagless labels used on the Gerber apparel are formulated with DEHP and contain DBP as well.

/ / /

CLASS ACTION COMPLAINT

36.     In 2008, Congress passed the Consumer Product Safety Improvement Act, Pub. Law 110-314, which severely restricted the use of a family of chemicals, known as phthalates, and banned outright the use of three phthalate chemicals, including DEHP and DBP, in all children's toys and childcare articles in light of the danger such substances pose to children.

37.     As outlined in a comprehensive letter sent on March 25, 2009 by Edmund G. Brown, Jr., Attorney General of California, to the Office of the Secretary, U.S. Consumer Product Safety Commission, the United States ban on the chemicals used in Gerber clothing was based on a California ban on the same chemicals enacted in 2007.  As the Attorney General observed:

> [T]he phthalate ban in the CPSIA section 108 [the federal ban] originated with the pre-existing California and European Union phthalate bans.  The current European Union phthalate ban was issued in 2005.  In July 2006 San Francisco banned the same six phthaltates in certain children's products.  California's A.B. 1108, which passed the Legislature on September 4, 2007, was intended to impose the San Francisco ban statewide.  Eight weeks later, on October 31, 2007, Senator Diane Feinstein of California introduced a bill in the U.S. senate to apply the same phthalate ban nationwide.

38.     Since December 2005, DBP has been listed as a California Proposition 65 Developmental Toxin, a California Proposition 65 Female Reproductive Toxin and a California Proposition 65 Male Reproductive Toxin.

39.     DEHP is a California Proposition 65 Known Carcinogen (listed as such in January 1988), and an EPA listed Probable Carcinogen.  The National Toxicology Program ("NTP") developed by the United States Department of Health lists DEHP as reasonably anticipated to be a carcinogen. DEHP is also a California Proposition 65 Male Reproductive Toxin (listed as such in October 2003).

CLASS ACTION COMPLAINT

40.     Scientists have also reported that exposure to DEHP is a possible contributor to the recent increase in the incidence of atopic dermatitis, *i.e.*, skin rashes.  (Takano, *et al.*, "Di-(2-ethylhexyl) Phthalate Enhances Atopic Dermatitis-Like Skin Lesions in Mice," *Environ Health Perspect* 114(8):1266-1269 (Aug. 2006))   Those researchers reported that DEHP enhanced atopic dermatitis at hundred-fold lower levels than the no observable adverse effect level.  (*Id.*, at 1268).

41.     The Occupational Safety and Health Guideline for DEHP, published by the Centers for Disease Control and Prevention, states that DEHP may cause adverse health effects following exposure via inhalation, ingestion, or dermal or eye contact.  The guideline also states that skin sensitization and diseases such as contact and/or allergic dermatitis effects from exposure to DEHP may occur.  http://74.125.93.104/custom?q=cache:ta7VNElh9ZgJ:www.cdc.gov/Niosh/pdfs/0236.pdf+dehp+dermatitis&cd=3&hl=en&ct=clnk&gl=us&client=google-coop.

42.     In October 2000, The NTP-CERHR Expert Panel Report on DBP concluded in part:  "Based upon recent estimated DBP exposures among some women of reproductive age, the NTP has some concern for DBP causing adverse effects to human development, particularly development of the male reproductive system."

43.     In addition, DBP is listed as a  chemical that causes allergic contact dermatitis.  (See, e.g., http://www.haz-map.com/allergic.htm;)

44.     Union Ink, a manufacturer of an ink reportedly used on garments known as plastisol ink, describes the hazardous nature of chemicals used to formulate one such ink in its Material Safety Data Sheet ("MSDS").  The MSDS states with respect to DBP: "Repeated or prolonged skin contact with DBP can result in dry, defatted and cracked skin causing increased susceptibility to infection.  In addition, dermatitis and skin rash and redness may occur from skin contact." (http://www.unionink.com/msds/msds-doc/FUZZBOND.DOC)

17

CLASS ACTION COMPLAINT

### E.      Defendant's Specific Practices

45.      Defendant Gerber designed, manufactured, marketed, advertised, promoted, sold and/or distributed apparel products containing heat-transferred or "tagless" labels, which were unsafe and unreasonably dangerous in normal use for the reasons detailed above.  Defendant represents on its website that its apparel products are tagless "to help protect baby's delicate skin."  It further claims to use "**protocols and testing processes . . . to ensure our products are safe for your baby**" and that Gerber is "**constantly keeping abreast and compliant with the evolving federal, state and retailer safety requirements in the children's market**."      http://www.gerberchildrenswear.com/NEWWWW/SocialAwareness/ EnvironmentandSafety/tabid/139/Default.aspx  (emphasis supplied).   If in fact Defendant was doing as it represented, it either was aware or should have been aware of the presence of DEHP and DBP in the tagless clothing it was selling to be used exclusively on infants and small children.

46.      Defendant's oversight and quality controls for its manufacturing facilities were inadequate and led to the use of toxic and/or hazardous chemicals in the defective apparel intended for use by babies and small children.   While Defendant claims it uses "protocols and testing processes" to "ensure  [its] … products are safe", it nevertheless distributed clothing with tagless labels containing hazardous chemicals known to cause skin irritation – chemicals that pose such a significant health risk to children that they have been specifically banned for use in children's products in Europe, in the State of California and, most recently, in the United States as a whole.

47.      Defendant failed to properly screen products during and immediately after the manufacturing process to ensure that Gerber apparel products containing heat-transferred or "tagless" labels were safe for use by children prior to placing them into the stream of commerce.

/ / /

CLASS ACTION COMPLAINT

48.    Even after receiving numerous customer complaints and after receiving reports indicating the potential link between tagless labels and health problems, Gerber continued to market clothing for infants and young children containing hazardous chemicals.  Gerber placed no warnings on its products to warn consumers of the dangers associated with those products.

49.    Plaintiffs reasonably believed they were purchasing Gerber apparel products that were safe for use on their infant children.  Upon wearing the defective apparel, Plaintiffs' children suffered adverse skin reactions in the area where the heat-transferred or "tagless" label came into contact with their skin.  Had the true facts been disclosed (*i.e.*, that there were chemicals in these products that were potentially harmful and could cause severe skin rashes) they would not have purchased such products at the prices they did.

50.     Defendant failed to adequately warn purchasers of the unreasonably unsafe and dangerous characteristics associated with its defective apparel.

51.    Defendant owed a duty to Plaintiffs and Class members to design, manufacture, market, advertise, promote, distribute and sell its apparel products containing heat-transferred or "tagless" labels without hidden and concealed contaminants contained therein.

52.    Defendant breached the duties detailed above, which defective condition proximately caused Plaintiffs' and Class members' injuries.

53.    Defendant either was aware or in the exercise of reasonable care should have known that the Gerber apparel products containing heat-transferred or "tagless" labels were defective and that Plaintiffs and Class members might have reasonably been expected to purchase and/or use the defective apparel, and either they or their small children would be adversely affected by the defective condition of such products.

54.    Much of the conduct at issue arises and emanates from California.

/ / /

19

CLASS ACTION COMPLAINT

55.     Plaintiffs are residents of California and purchased the defective clothing at issue in California.

56.     Although Gerber's offices are not located in California, it sells its defective clothing through retailers such as Wal-Mart, Target and others that are located and/or have distribution facilities in California.

57.     Additionally, a significant amount of Gerber apparel products containing heat-transferred or "tagless" labels are labeled as being made in China. China sends more its products through the ports in California than any other port in the United States.  *See, e.g.* U.S. Department of Transportation Research and Innovative Technology Administration Bureau of Transportation Statistics, *America's Container Ports: Delivering the Goods,* March 2007, http://www.bts.gov/publications/americas_container_ports/pdf/entire.pdf.

## V.

## CLASS ACTION ALLEGATIONS

58.     Plaintiffs bring this class action claim pursuant to Rule 23 of the Federal Rules of Civil Procedure.   The requirements of Rule 23 are met with respect to the class defined below.

**A.     The Plaintiff Class.**

59.     Plaintiffs bring their claims on their own behalf, and on behalf of the following class:

> All persons in California, as well as such states within the United States that the Court determines is appropriate, who purchased Gerber apparel products containing heat-transferred or "tagless" labels since October 2005.

60.     Plaintiffs reserve the right to amend or modify their Complaint and/or the Class definition after receiving responses to meaningful discovery and/or in their motion for class certification.

/ / /

20

61.     Members of the Class are so numerous and geographically dispersed that joinder of all Class members is impracticable.  The Class includes thousands if not hundreds of thousands of individuals geographically dispersed throughout the United States.  The precise number and identities of Class members are unknown to Plaintiffs but should be able to be obtained through notice and discovery. Notice can be provided through a variety of means including publication, the cost of which is properly imposed upon Defendant.

62.     Plaintiffs will fairly and adequately protect the interests of all Class members and have retained counsel competent and experienced in class and consumer litigation and who have been repeatedly found to be adequate to represent the interests of Class members in other class actions.

63.     Plaintiffs' claims are typical of the claims of the Class as Class members sustained similar types of injury arising out of the conduct challenged in this action.  The injuries sustained by Plaintiffs and the Class members flow from the common nucleus of operative facts detailed above.

64.     There is a well-defined community of interest in the common questions of law and/or fact alleged herein since the rights of each Class member were infringed or violated in a similar fashion based upon Defendant's wrongdoing or arise out of similar legal obligations.

65.     The common questions of law and fact that are detailed in this Complaint predominate over any questions solely affecting individual Class members.  Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiff and the Class members.  Individual questions, if any, pale by comparison to the numerous common questions that predominate.

66.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy because joinder of all Class members is impracticable. Furthermore, the expense and burden of individual litigation make it

CLASS ACTION COMPLAINT

impossible for the Class members to individually redress the wrongs done to them.

67.     The claims in this action are manageable on a class-wide basis and can be the subject of a class-wide plan for litigating and resolving these issues.

68.     Defendant has also acted or has refused to act on grounds generally applicable to the Class, thereby making it appropriate to grant final declaratory and injunctive relief with respect to the Class as a whole.

## COUNT I:

## BUSINESS AND PROFESSIONS CODE §17200, *ET SEQ.* – UNFAIR BUSINESS ACTS AND PRACTICES

### (Against Defendant Gerber)

69.     Plaintiffs repeat each and every allegation contained in the paragraphs above and incorporate such allegations by reference herein.

70.     During the relevant time period, Defendant misrepresented and omitted material facts it was obligated to or should have disclosed regarding the fact the defective apparel intended to be worn by infants and children contained hazardous chemicals, including DEHP and DBP.  Defendant was in exclusive possession of such information but did not disclose it, even though such information went to the safety of such products.

71.     Such information with respect to the presence of hazardous chemicals including DEHP and DBP in the defective apparel is material to Plaintiffs in that as reasonable consumers they would have considered such information to be a substantial factor in deciding whether to purchase or use Gerber tagless clothing for infants and children.  Plaintiffs and the Class Members had a reasonable expectation that Gerber tagless clothing for infants and children would not contain hazardous chemicals that could cause infants and children to suffer contact dermatitis, burns, rashes and that are linked to long-term health risks.  Such expectations are consistent with Gerber's statements to the effect that its products were subject to "protocols and testing processes that we follow to ensure our

22

CLASS ACTION COMPLAINT

products are safe for your baby" and "compliant with evolving federal, state and retailer safety requirements."

72.     The need to disclose such material facts is within the spirit and intent of numerous legislatively declared policies including California's Proposition 65, California Health and Safety Code §25249.6, California Health & Safety Code §108935, the Consumer Product Safety Act and the Federal Hazardous Substances Act, 15 U.S.C.A. §1261(f).

73.     In addition, Defendant was under a duty at all relevant times to Plaintiffs and the Class to disclose the material facts detailed herein in terms of the presence of hazardous chemicals  such as DEHP and DBP in the goods at issue because, among other reasons:

a.     Defendant was in a superior if not exclusive position to know the true state of facts about the presence of chemicals in the defective apparel that could affect the safety of such products, since it claimed such information was "proprietary"; and

b.     Plaintiffs and Class members could not reasonably have been expected to learn or discover that the defective apparel contained hazardous chemicals such as DEHP and DBP, which Defendant either knew or reasonably should have understood.

74.     In failing to disclose the presence of dangerous chemicals in the defective apparel such as DEHP and DBP, Defendant concealed material facts from the public.  There is no countervailing benefit to consumers or competition from Defendant's failure to disclose the material fact that the defective apparel contained hazardous chemicals including DEHP and DBP or making the public misrepresentations set forth above.  The harm to consumers is substantial and, based on Gerber's suppression of material facts, could not reasonably have been avoided.

/ / /

CLASS ACTION COMPLAINT

75.     The gravity of the consequences of Defendant's conduct outweighs any justification, motive or reason therefor, particularly considering the available legal alternatives that exist in the marketplace (such as disclosing these facts or not using a manufacturing method that results in such chemical exposure).  Based on the duties Gerber claims it has imposed on itself and others it works in concert with in terms of making the safety of infants and small children a top priority, such conduct is immoral, unethical, unscrupulous, offends established public policy as detailed above and/or is substantially injurious to Plaintiffs and other members of the Class.

76.     By designing, manufacturing, distributing and selling the defective apparel containing known hazardous chemicals such as DPB and DEHP at levels sufficient to cause infants and children to suffer contact dermatitis, burns, rashes and other injuries, but not disclosing the presence of such chemicals in products admittedly designed to be used by babies and small children, Defendant engaged in conduct that constitutes unfair business acts and practices.

77.     Defendant is strictly liable for engaging in unfair business acts and practices.

78.     As a result of Defendant's unfair business practices, Plaintiffs have suffered injury in fact and a loss of money or property in terms of, *inter alia*, paying for products that are unsuitable for their ordinary use as clothing for their children, which they would not have purchased at the prices they paid had the true material facts been fully disclosed.

79.     Pursuant to Business and Professions Code §17204, Plaintiffs and the Class are entitled to an order of this Court enjoining such conduct on the part of Gerber, and such other orders and judgments that may be necessary to provide for complete equitable monetary relief by disgorging Gerber ill-gotten gains, including the monies Gerber received or saved as a result of its wrongful acts and practices detailed herein, and restoring to any person in interest such monies paid for Gerber

CLASS ACTION COMPLAINT

apparel products containing heat-transferred or "tagless" labels by ordering the payment of full restitution plus interest.

## COUNT II:

## BUSINESS AND PROFESSIONS CODE §17200, *ET SEQ.*

## UNLAWFUL BUSINESS ACTS AND PRACTICES

### (Against Defendant Gerber)

80.     Plaintiffs repeat each and every allegation contained in the paragraphs above and incorporate such allegations by reference herein.

81.     The business acts and practices alleged above are unlawful as a breach of an implied warranty of fitness for a particular purpose, breach of implied warranty of merchantability, violations of California Civil Code §1792, *et seq.,* violations of the Magnuson-Moss Warranty Act, 15 U.S.C. §2301, *et seq.*, violations of California Business and Professions Code §17500, California Civil Code §1750, *et seq.*, and other laws detailed herein.

82.     By committing the acts and practices described, Gerber has, in the course of business and at all material times, exposed infants and children to DEHP and DBP, chemicals known to the State of California to cause cancer or reproductive toxicity within the meaning of California Health and Safety Code §25249.6 without first giving clear and reasonable warning to such individuals, as well as in potential violation of Section 108935.

83.     By committing the acts and practices described above, Defendant has, in the course of business and at all material times, exposed infants and children to DEHP and DBP, hazardous substances and irritants as defined in the Federal Hazardous Substances Act, 15 U.S.C.A. §1261(f).  Plaintiffs reserve the right to identify other violations of law as the facts develop.

84.     Such business acts and practices of Gerber, as described above, constitute "unlawful" business acts and practices.  Based on such violations of law, Defendant is strictly liable for committing unlawful business practices.

25

CLASS ACTION COMPLAINT

85.     As a result of Defendant's unlawful business practices, Plaintiffs have suffered injury in fact and a loss of money or property in terms of, *inter alia*, paying for products that are unsuitable for their ordinary use as clothing for their children, which they would not have purchased at the prices they paid had the true facts been fully disclosed.

86.     Plaintiffs and the Class, pursuant to Business and Professions Code §17204, are entitled to an order of this Court enjoining such future conduct on the part of Gerber, and such other orders and judgments that may be necessary to provide for complete equitable monetary relief by disgorging Gerber ill-gotten gains, including the monies Gerber obtained or saved as a result of its wrongful acts and practices detailed herein, and restoring to any person in interest the money paid for Gerber apparel products containing heat-transferred or "tagless" labels by ordering the payment of full restitution plus interest.

## COUNT III:

## BUSINESS AND PROFESSIONS CODE §17200, *ET SEQ.* –

## FRAUDULENT BUSINESS ACTS AND PRACTICES

### (Against Defendant Gerber)

87.     Plaintiffs repeat each and every allegation contained in the paragraphs above and incorporate such allegations by reference herein.

88.     Defendant has misrepresented the safety of its products, claiming on its website that it used "certain protocols and testing processes … to ensure our products are safe for your baby". These misstated facts are material in that a reasonable consumer would likely have considered them to be significant in deciding whether to purchase Gerber tagless clothing.

89.     Throughout the relevant time period, Defendant also omitted material facts it was obligated to disclose regarding the fact the defective apparel contained hazardous chemicals including DEHP and DBP that could cause infants and children to suffer contact dermatitis, burns, rashes and the like and that are linked

26

to long term health risks.   The facts concealed or not disclosed by Defendant with respect to the presence of hazardous chemicals including DEHP and DBP in the defective clothing at issue are material in that Plaintiffs would have considered these facts to be a substantial factor in deciding whether to purchase and use Gerber tagless clothing.

90.    Plaintiffs and the Class members had a reasonable expectation that the defective apparel they were purchasing for their infants and small children would not contain hazardous chemicals such as DEHP and DBP, or reasonably assumed that the defective apparel did not contain any hazardous chemicals.   Such expectations and assumptions are substantiated by the number of complaints and grievances of the injuries at issue offered by aggrieved parents via various blogs and Internet message boards.

91.    Based on the numerous facts detailed above, Defendant was under a duty to Plaintiffs and the Class to disclose the hazardous nature of the defective apparel containing DEHP and DBP.   Such a duty existed because Defendant had exclusive possession and knowledge of facts – the presence of hazardous chemicals such as DEHP and DBP in the tagless labels – that were not available to consumers and that were material.   A duty also arose because the tagless labels created a safety risk to children, many of whom have suffered injuries because of the hazardous chemicals in the tagless labels.   A duty to disclose was further imposed by statutes, including California Health and Safety Code §25249.6, California Health & Safety Code §108935, the Consumer Product Safety Act and the Federal Hazardous Substances Act.

92.    Such acts and practices of Gerber, as described above, constitute "fraudulent" business practices under California Business and Professions Code §17200, *et seq*. in that such conduct was and is likely to deceive Plaintiff and members of the Class into believing such defective apparel was safe for their

/ / /

CLASS ACTION COMPLAINT

children when used as intended.   As a result, Defendant is strictly liable for engaging in such conduct.

93.    As result of Defendant's fraudulent business practices, Plaintiffs have suffered injury in fact and a loss of money or property in terms of, *inter alia*, paying for products that are unsuitable for their ordinary use as clothing for their children, which they would not have purchased at the prices they paid had the true facts not been misrepresented or had been fully disclosed.

94.    Plaintiffs and the Class, pursuant to Business and Professions Code §17204, are entitled to an order of this Court enjoining such  conduct on the part of Gerber, and such other orders and judgments that may be necessary to provide for complete equitable monetary relief by disgorging Gerber ill-gotten gains, including the monies Gerber obtained or saved as a result of its wrongful acts and practices detailed herein, and restoring to any person in interest the money paid for Gerber apparel products containing heat-transferred or "tagless" labels by ordering the payment of full restitution plus interest.

## COUNT IV:

## BUSINESS AND PROFESSIONS CODE §17500, *ET SEQ.*

## (MISLEADING AND UNTRUE ADVERTISING)

## (Against Defendant Gerber)

95.    Plaintiffs repeat each and every allegation contained in the paragraphs above and incorporate such allegations by reference herein.

96.    Plaintiffs assert this cause of action for violations of California Business and Professions Code §17500, *et seq.* for misleading and untrue advertising against Gerber.

97.    Beginning in at least October 2005 and at all material times, Gerber has offered its apparel products containing heat-transferred or tagless labels by way

/ / /

28

CLASS ACTION COMPLAINT

of, *inter alia*, the Internet, product packaging, commercial advertisements and other promotional materials.

98.     Such promotional materials come within the definition of advertising as contained in Business and Professions Code §17500, *et seq.* in that such promotional materials are intended as inducements to purchase apparel products containing heat-transferred or tagless labels and are statements disseminated by Gerber to Plaintiffs and the Class or intended to reach members of the Class.

99.     Throughout the Class Period, Gerber has consistently omitted material facts from such advertising that it was obligated to disclose in that the defective apparel contained hazardous chemicals, including DEHP and DBP.

100.    At all material times, Gerber in the exercise of reasonable care should have known that the defective apparel contained hazardous chemicals such as DEHP and EBP, and that this was a material fact in its exclusive possession that consumers were not likely to uncover, and because it affected the safety of such products and their use would be material to such consumers.  Accordingly, at all material times, Gerber in the exercise of reasonable care should have known that its advertising and promotional materials were misleading and deceptive for failing to disclose such material omitted facts.

101.    Throughout the Class Period, Gerber has prepared and distributed via the Internet, labeling, product packaging, commercial advertisements and other promotional materials that by not disclosing the material facts detailed above falsely advertise the nature and quality of its apparel products containing heat-transferred or tagless labels.  Consumers, including Plaintiffs and the Class, are among the intended targets of such representations.

102.    The above acts and practices of Gerber, in disseminating said deceptive statements to consumers, including Plaintiffs and members of the Class, were or are likely to deceive Plaintiffs and other members of the Class.

/ / /

CLASS ACTION COMPLAINT

103.   As a result of Defendant's failure to disclose material facts about the safety of these products that were within its exclusive possession, Plaintiffs were misled into purchasing the defective apparel.  As sold, the defective apparel does not provide the quality and safety Plaintiffs sought and thought they were receiving.  These facts are material to Plaintiffs since, if disclosed, they would have been a substantial factor in deciding whether to purchase these products.

104.   Plaintiffs suffered injury in fact and a loss of money or property in that, if these material omitted facts had been disclosed as Gerber was obligated to do, or if Gerber had not misled the public with its misrepresentations, including that it used "testing processes… to ensure our products are safe for your baby" and that its products complied with evolving federal and state safety requirements in the children's market, Plaintiffs would not have purchased the defective apparel at the prices that they did.

105.   Plaintiffs, both individually and on behalf of the Class, pursuant to Business and Professions Code §17535, are entitled to an order of this Court enjoining such conduct on the part of Gerber, and such other orders and judgments that may be necessary to provide for complete equitable monetary relief by restitution and disgorging Gerber's ill-gotten gains, including the monies Gerber saved as a result of its wrongful acts and practices detailed herein, and restoring to any person in interest the money paid for Gerber apparel products containing heat-transferred or "tagless" labels by ordering complete restitution plus interest thereon.

## COUNT V:

## VIOLATION OF CONSUMERS LEGAL REMEDIES ACT

### (Against Defendant Gerber)

106.   Plaintiffs reallege and incorporate by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

/ / /

CLASS ACTION COMPLAINT

107.   This cause of action is brought under the Consumers Legal Remedies Act, California Civil Code §1750, *et seq.* ("CLRA").  Plaintiffs and Class members are consumers as defined by California Civil Code §1761(d), and Defendant's products are goods within the meaning of the CLRA.

108.   Defendant violated and continues to violate the CLRA by engaging in the following deceptive practices proscribed by the California Civil Code §1770(a) that constitute transactions intended to result in, and that did result in, the sale of the products at issue herein to Plaintiffs and the Class:

a.   Representing that the goods have characteristics, uses or benefits which they do not have (Cal. Civ. Code §1770(a)(5));

b.   Representing that the goods are of a particular standard, quality or grade if it is of another (Cal. Civ. Code §1770(a)(7));

c.   Advertising goods with the intent not to sell them as advertised (Cal. Civ. Code §1770(a)(9));

d.   Representing that the goods have been supplied in accordance with a previous representation when they have not (Cal. Civ. Code §1770(1)(16).

109.   As detailed above, by purchasing the Products Plaintiffs and the Class suffered damage by the wrongful acts and practices of Defendant, in violation of California Civil Code §1781.

110.   Pursuant to Section 1782 of the CLRA, Defendant has received notice in writing by certified mail of the particular violations of Section 1770 of the CLRA.   Plaintiffs demanded that Defendant offer to resolve the problems associated with the actions detailed above and give notice of all affected consumers of the intent to so act.  The time for Defendant to respond has passed without an agreement to take the action required by the CLRA on behalf of all affected consumers.

/ / /

CLASS ACTION COMPLAINT

111.  Plaintiffs and the Class therefore pray for restitution, actual and statutory damages for the reasons set forth above, injunctive relief and any other relief the Court believes is appropriate under this cause of action, against Defendant.   In addition or alternatively, for the reasons detailed above, such conduct of Gerber was malicious, fraudulent and oppressive, entitling Plaintiffs and Class members to exemplary damages.

**COUNT VI:**

**ALTERNATIVE CLAIM FOR RELIEF UNDER**

**THE STATE CONSUMER PROTECTION LAWS**

**(Against Defendant Gerber)**

112.  Plaintiffs repeat each and every allegation contained in the paragraphs above and incorporate such allegations by reference therein.

113.  In the alternative to requesting relief for the proposed nationwide class under California Business and Professions Code and the Consumers Legal Remedies Act, Plaintiffs and the Class allege that Defendant violated the substantive consumer protection and unfair and deceptive trade practices acts or statutes of all 50 states and United States territories where their consumers reside.

114.  By reason of the conduct as alleged herein, including disseminating untrue advertising that was likely to deceive Plaintiffs and the other members of the Class by omitting material facts regarding the presence of hazardous toxins and irritants such as DEHP and DBP in the defective apparel, Defendant misled consumers about the safety of the tagless clothing disseminated for use by infants and small children.

115.  Defendant violated the laws prohibiting unfair and deceptive trade practices of the states and territories wherein Class members reside, including: Alaska Stat. §44-1522, *et seq.*; Ariz. Rev. Stat. §44-1522, *et seq.*; Ark. Code §4-88- 101, *et seq.*; Colo. Rev. Stat. §6-1-105, *et seq.*; Conn. Gen. Stat. §42-110b, *et seq.*; 6 Del. Code §2511, *et seq.*; D.C. Code §28-3901, *et seq.*; Fla. Stat. §501.201,

*et seq.*; Ga. Stat. §10-1-392, *et seq.*; Haw. Rev. Stat. §480, *et seq.*; Idaho Code §48-601, *et seq.*; 815 ILCS 510/2, *et seq.;* Kan. Stat. §50-623, *et seq.*; Ky. Rev. Stat. §367.110, *et seq.*; La. Rev. Stat. § 51:1401, *et seq.*; Mass Gen L Ch. 93A, *et seq.*; Md. Com. Law Code §13-101, *et seq.*; Mich. Stat. §445.901, *et seq.*; Minn. Stat. §8.31, *et seq.*; Vernon's Missouri Stat. §407.010, *et seq.*; Mont. Code §30-14-101, *et seq.*; Neb. Rev. Stat § 59-1601, *et seq.*; Nev. Rev. Stat. §598.0903, *et seq.*; N.H. Rev. Stat. §358-A:l, *et seq.*; N.J. Rev. Stat. §56:8-1, *et seq.*; N.M. Stat. §57-12-1, *et seq.*; N.Y. Gen. Bus. Law §349, *et seq.*; N.C. Gen. Stat. §75-1.l, *et seq.*; N.D. Cent. Code § 51-15-01. *et seq.*; Ohio Rev. Stat. § 1345.01, *et seq.*; Okla. Stat. 15 §751, *et seq.*; Or. Rev. Stat. §646.605, *et seq.*; 73 Pa. Stat. §201-1, *et seq.*; R.I. Gen. Laws. §6-13.1-1, *et seq.*; S.C. Code Laws §39-5-10, *et seq.*; S.D. Code Laws §37-24-1, *et seq.*; Tenn. Code §47-18-101, *et seq.*; Tex. Bus, & Com. Code §17.41, *et seq.*; Utah Code. §13-11-1, *et seq.*; 9 Vt. §2451, *et seq.*; Va. Code §59.1-196,*et seq.*; Wash. Rev. Code. §19.86.010, *et seq.*; West Virginia Code §46A-6-l01, *et seq.*

116. As a direct and proximate result of Defendant's statutory violations, Plaintiffs and Class members have been injured and/or suffered damages, including but not limited to the value of the defective apparel, have incurred the cost of medical expenses and diagnostic screening and/or are entitled to economic damages for medical monitoring to the fullest extent permitted by law.

117. By reason of Defendant's violations, Plaintiffs and Class members are entitled to recover treble damages where available, including but not limited to some or all of the monies expended to purchase the defective apparel and the cost of medical monitoring.

## COUNT VII:

## COMMON COUNTS AND UNJUST ENRICHMENT

### (Against Defendant Gerber)

118. Plaintiffs repeat each and every allegation contained in the paragraphs above and incorporate such allegations by reference therein.

33

119.   Defendant has benefited from its unlawful conduct by receiving revenues and profits derived from the sales of the hazardous and defective apparel that was improperly manufactured, supplied and/or distributed into the stream of commerce.   Defendant appreciated the benefit of the receipt of such excessive revenue. This excessive revenue has been received by Defendant at the expense of Plaintiffs and other members of the Class, under circumstances in which it would be inequitable for Defendant to be permitted to retain the benefit.

120.   Plaintiffs and other members of the Class are entitled to the establishment of a constructive trust consisting of the benefit conferred upon Defendant in the form of the revenues and profits derived from the sale of the defective apparel and the return of any monies by which Defendant was unjustly enriched.

## COUNT VIII:

## BREACH OF EXPRESS AND IMPLIED WARRANTIES

## (Against Gerber and Wal-Mart)

121.   Plaintiffs repeat each and every allegation contained in the paragraphs above and incorporate such allegations by reference therein.

122.   Defendant Wal-Mart is named as a defendant in this cause of action only as a retailer seller of such products to Plaintiffs and a significant portion of the Class members, to the extent required to be named as a defendant for purposes of establishing privity for an express or implied warranty claim.

123.   Plaintiffs and the Class members purchased the tagless clothing at issue based in substantial part upon the advertisements and statements of material fact as detailed above and contained on the labeling and packaging of the products in question.

124.   These products were not fit for the purposes for which they were intended, nor would they pass without objection in the trade or industry.

/ / /

34

CLASS ACTION COMPLAINT

125.   Defendant Gerber was made to realize these issues, and despite receiving notice from Plaintiffs of these claims requesting it resolve these breaches of warranties, to date Defendant Gerber has refused to take any action to fully resolve this problem as to consumers who purchased these products.

126.   Because these products are used by infants and small children and such warranties are either expressly made through advertising and statements on the products' labeling and packaging or are implied by law in all consumer transactions, Plaintiffs and the Class members who purchased such products are entitled to incidental and compensatory damages directly from Defendant Gerber, and Defendant Wal-Mart as to goods sold by Defendant Wal-Mart.

## COUNT IX:

## VIOLATION OF CIVIL CODE SECTION 1709

## (Against Defendant Gerber)

127.   Plaintiffs repeat each and every allegation contained in the paragraphs above and incorporate such allegations by reference therein.

128.   The acts and practices of Gerber, as described above, constitute the suppression of material facts or facts Defendant was obligated or under a duty to disclose based on statements in publicly disseminated products regarding its concern over children's safety and its alleged independent testing procedures designed to ensure the safety of such products.

129.   Defendant also had a duty to disclose the presence of hazardous chemicals in the tagless labels used in the defective apparel at issue because the chemicals created an unreasonable safety risk to children – both a risk of immediate physical injury in the form of blisters, burns, and other similar injuries, and a risk of adverse health effects from exposure to hazardous chemicals.

130.   Defendant also had a separate, independent duty to disclose the hazardous chemicals in the tagless labels because such disclosure was required by, *inter alia*, California's Proposition 65, California Health and Safety Code Section

CLASS ACTION COMPLAINT

25249.6, California Health & Safety Code Section 108937, the Consumer Product Safety Act and the Federal Hazardous Substances Act.

131.   Defendant omitted material facts it had access to and was in exclusive possession of, the concealment of which would be significant to consumers at the time of sale of such products.  Thus, Defendant had a duty to disclose the material fact the defective apparel contained hazardous chemicals, including DEHP and DBP.   The facts that were not disclosed by Defendant to Plaintiffs and the Class with respect to the presence of hazardous chemicals including DEHP and DBP in the defective apparel were material to Plaintiffs and the Class in that a reasonable consumer would have considered them to be a substantial factor in deciding whether to purchase Gerber tagless clothing and likely would not have purchased such clothing at the prices they did if they were told by Gerber of the hazardous nature of tagless label products.

132.   Through its own protocols and testing processes and through numerous consumer complaints, Defendant either learned or should have known that the tagless labels contained hazardous chemicals, yet failed to disclose that material fact to consumers and continues to conceal such facts.

133.   Plaintiffs and the Class members had a reasonable expectation that the defective apparel they were purchasing for infants and children would not contain hazardous chemicals.  Likewise, Plaintiffs and the Class members can reasonably be presumed to have believed that the defective apparel did not contain hazardous chemicals that Defendant had a duty to disclose, such as DEHP and DBP. Defendant thus reasonably could have anticipated that Plaintiffs and the Class purchased such products in part based upon such reasonable expectations and assumptions, and Defendant intended them to do so.

134.   Defendant's suppression and omission of material facts associated with its failure to disclose the presence of hazardous chemicals such as DEHP and DBP in the defective apparel occurred repeatedly in their trade or business, was

36

Case 2:09-cv-07420-DSF-DTB   Document 1   Filed 10/13/09   Page 37 of 43   Page ID #:37


capable of deceiving a substantial portion of the purchasing public, and imposed a serious safety risk on the public.

135.   Thus, in failing to disclose the presence of dangerous chemicals in the defective apparel such as DEHP and DBP that Defendant either knew or reasonably should have known were in such defective apparel, Defendant concealed material facts and breached its duty to Plaintiffs and the Class not to do so.

136.   In addition to failing to disclose information it had a duty to disclose, as described above, Defendant actively concealed material information regarding the hazardous nature of the tagless labels.  Even after conducting, according to its own statements, independent tests that should have revealed the hazardous chemicals on the tagless labels prior to marketing, after numerous consumer complaints were posted on the Internet, and after the public disclosure of analogous issues with its competitor Carters tagless labels in November 2007, Defendant continued to conceal the presence of hazardous chemicals in the tagless labels.

137.  As a direct and proximate result of such conduct, Plaintiffs and members of the Class have paid for products that are unsuitable for their intended use and/or have incurred the costs of diagnostic screening and medical treatment and may need to incur the cost of medical monitoring.

138.  As a direct and proximate result of Defendant's acts of concealment and suppression, Plaintiffs and the Class have suffered and will continue to suffer economic damages as detailed above.   In addition, as such conduct was malicious, fraudulent or oppressive for the reasons detailed above, Plaintiffs and the Class members are entitled to an award of exemplary damages.

## **PRAYER FOR RELIEF**

Based upon the above allegations, Plaintiffs request the following relief as appropriate for each cause of action:

CLASS ACTION COMPLAINT

1.      An Order certifying that this action be maintained as a class action;

2.      For a judgment of the Court to disgorge and/or restore, by way of restitution, refund or reimbursement, to any person in interest any money paid to and/or acquired by the Defendant based on its illegal conduct, and ensuring all excessive and ill-gotten monies obtained by Defendant as a result thereof are returned with interest thereon to the persons affected by such acts and practices;

3.      For all actual, incidental, consequential, exemplary and/or statutory damages as provided for by law under the above causes of action that permit such relief, or other monies expended by Plaintiffs and members of the Class including, but not limited to, any monies expended for these products, any medical-related expenses incurred as a result of the use of such products, or the economic costs for incurring ongoing medical monitoring or treatment;

4.      For preliminary and permanent injunctive relief prohibiting, restraining and enjoining Defendant from engaging in the conduct complained of herein, including:

    a.      Failing to implement proper quality control measures or adequately monitor the manufacturing and design of the defective apparel;

    b.      Failing to adequately monitor, test and inspect the quality of the defective apparel;

    c.      Failing to warn of the dangers of the defective apparel including, but not limited to, the fact its apparel products containing heat-transferred or tagless labels contain chemicals and/or other adulterants such as DEHP and DBP, which are extremely dangerous and cause severe skin reactions; and

    d.      Failing to correct the misperceptions created by its public statements regarding the products in question, thereby requiring corrective disclosures and advertising.

5.      An Order directing the Defendant to inform and educate any and all retail sellers of the defective apparel of the nature of the defect, as well as the

38

CLASS ACTION COMPLAINT

1   necessary procedures that must take place if/or when a customer seeks to return the
2   defective apparel;

3       6.      As against Defendant Wal-Mart, for the amounts paid to its stores
4   from the sales of such products to the extent it is a necessary party for the breach of
5   express or implied warranty cause of action;

6       7.      For an award of attorneys' fees pursuant to, *inter alia*, Code of Civil
7   Procedure §1021.5 and Civil Code §1780, and the other laws referenced herein to
8   the extent available under such laws;

9       8.      For costs of suit herein incurred;

10      9.      For pre- and post-judgment interest; and/or

11      10.     For such other and further relief as this Court deems appropriate or
12  which is allowed for in law or equity.

13              **DEMAND FOR JURY TRIAL**

14      Plaintiffs demand a trial by jury on all claims so triable as a matter of right,
15  and for an advisory jury on all other causes of action.

16  DATED:  October 9th, 2009                THE CONSUMER LAW GROUP

17                                           By:

18                                              Alan M. Mansfield (SBN 125998)
                                                alan@clgca.com
19
20                                           9466 Black Mountain Road, Suite 225
                                             San Diego, CA 92126
21                                           Tel: (619) 308-5034
                                             Fax: (888) 341-5048
22                                           WHATLEY DRAKE & KALLAS, LLC
                                             Joe R. Whatley, Jr., Esq.
23                                           jwhatley@wdklaw.com
                                             Edith M. Kallas, Esq.
24                                           ekallas@wdklaw.com
                                             1540 Broadway, 37th Floor
25                                           New York, NY 10036
                                             Tel: (212) 447-7070
26                                           Fax: (212) 447-7077

27
28

                              39

CLASS ACTION COMPLAINT

1  Thomas J. Butler, Esq.
   tbutler@wdklaw.com
2  2001 Park Place North, Suite 1000
   Birmingham, AL 35203
3  Tel: (205) 328-9576
   Fax: (205) 328-9669
4
   EMERSON POYNTER LLP
5  John G. Emerson
   jemerson@emersonpoynter.com
6  830 Apollo Lane
   Houston, TX  77058-2610
7  Tel: (281) 488-8854
   Fax: (281) 488-8867
8
   Scott E. Poynter, Esq.
9  scott@emersonpoynter.com
   Christopher D. Jennings, Esq.
10 cjennings@emersonpoynter.com
   500 President Clinton Ave., Ste. 305
11 Little Rock, AR  72201
   Tel:  (501) 907-2555
12 Fax:  (501) 907-2556
13 JIGARJIAN LAW OFFICE
   Robert A. Jigarjian, Esq. (SBN 171107)
14 jigarjianlaw@gmail.com
   128 Tunstead Avenue
15 San Anselmo, CA 94960
   Tel: (415) 341-6660
16
   BRANSTETTER STRANCH &
17    JENNINGS PLLC
   James G. Stranch III, Esq.
18 jims@branstetterlaw.com
   J. Gerard Stranch, IV, Esq.
19 gerards@branstetterlaw.com
   227 Second Avenue North, Fourth Floor
20 Nashville, TN  37201-1631
   Tel: (615) 254-8801
21 Fax:  (615) 250-3937
22 Attorneys for Plaintiff
23
24
25
26
27
28

CLASS ACTION COMPLAINT

Name & Address:
Alan M. Mansfield (SBN 125998)
THE CONSUMER LAW GROUP
9466 Black Mountain Rd., Suite 225
San Diego, CA 92126
Tel: (619) 308-5034

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAURIE M. MONTANEZ and JEHAN HUGHES, individually and on behalf of all others similarly situated,<br><br>PLAINTIFF(S)<br><br>v.<br><br>GERBER CHILDRENSWEAR, LLC; and WAL-MART STORES, INC.,<br><br>DEFENDANT(S). | CASE NUMBER<br><br>CV 09 - 07420 CBM (DTBx)<br><br><br><br>**SUMMONS** |

TO:   DEFENDANT(S): GERBER CHILDRENSWEAR, LLC and WAL-MART STORES, INC.

A lawsuit has been filed against you.

Within __20__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.   The answer or motion must be served on the plaintiff's attorney, _ALAN M. MANSFIELD_____, whose address is _9466 Black Mountain Road, Suite 225, San Diego, CA 92126_____.  If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

**TERRY NAFISI**

Clerk, U.S. District Court

Dated: **OCT 1 3 2009**

By: _____
Deputy Clerk

*(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)].*

CV-01A (12/07)                              **SUMMONS**                    ORIGINAL

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐) | DEFENDANTS |
|---|---|
| LAURIE M. MONTANEZ<br>JEHAN HUGHES | GERBER CHILDRENSWEAR, LLC<br>WAL-MART STORES, INC. |

| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)<br><br>Alan M. Mansfield, THE CONSUMER LAW GROUP<br>9466 Black Mountain Rd., Suite 225, San Diego, CA 92126<br>Tel: (619) 308-5034 | Attorneys (If Known) |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff   ☐ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant   ☑ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☑ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☑ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify):   ☐ 6 Multi-District Litigation   ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:   JURY DEMAND:** ☑ Yes   ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☑ Yes   ☐ No   ☑ MONEY DEMANDED IN COMPLAINT: $ To Be Determined

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
CAFA, 28 U.S.C. Section 1332(d)

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | FORFEITURE / PENALTY | PROPERTY RIGHTS |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☑ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | | SOCIAL SECURITY |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | | ☐ 445 American with Disabilities - Employment | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | IMMIGRATION | | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 893 Environmental Matters | REAL PROPERTY | ☐ 462 Naturalization Application | ☐ 446 American with Disabilities - Other | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 463 Habeas Corpus-Alien Detainee | ☐ 440 Other Civil Rights | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 465 Other Immigration Actions | | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determination Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | | | | FEDERAL TAX SUITS |
| ☐ 950 Constitutionality of State Statutes | ☐ 240 Torts to Land | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| | ☐ 245 Tort Product Liability | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | |

**FOR OFFICE USE ONLY:**   Case Number:   CV 09 - 07420 CBM (DTBx)

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

CV-71 (05/08)                                    CIVIL COVER SHEET                                    Page 1 of 2

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑ No ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑ No ☐ Yes
If yes, list case number(s): _____

**Civil cases are deemed related if a previously filed case and the present case:**
(Check all boxes that apply)   ☐ A. Arise from the same or closely related transactions, happenings, or events; or
☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
☐ D. Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.
☐   Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Plaintiff Laurie M. Montanez: San Bernardino<br>Plaintiff Jehan Hughes: Los Angeles | |

(b)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.
☐   Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | Defendant Gerber Childrenswear, LLC: Delaware<br>Defendant Wal-Mart Stores, Inc.: Arkansas |

(c)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
**Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| San Bernardino County, and throughout the United States | |

* **Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved.

X. SIGNATURE OF ATTORNEY (OR PRO PER): _____   Date October 9, 2009

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |

CV-71 (05/08)                    **CIVIL COVER SHEET**                    Page 2 of 2